CLIFTON *v.* SCHOOL DISTRICT No. 14 OF RUSSELLVILLE.

4-4228

Opinion delivered February 3, 1936.

*Joe D. Shepherd*, for appellant.

*Robert Bailey* and *Eugene Quay,* for appellees.

*Pat Mehaffy* and *Carl E. Bailey* and *Walter L. Pope,* amici curiae.

HUMPHREYS, J. The question involved on this appeal is whether school districts in this State may buy fire and tornado insurance on the buildings and property in the district in foreign mutual insurance companies authorized to do business in this State.

Specific statutory authority for insuring public property in mutual insurance companies was conferred on any public or private corporation, board, or association, by § 8 of act 652 of the Acts of 1919, which section is § 6026 of Crawford & Moses' Digest, and is as follows:

"Any public or private corporation, board or association in this State or elsewhere may make applications, enter into agreements for and hold policies in any such mutual insurance company. Any officer, stockholder, trustee, or legal representative of any such corporation, board, association or estate may be recognized as acting for or on its behalf for the purpose of such membership, but shall not be personally liable upon such contract of insurance by reason of acting in such representative capacity. The right of any corporation organized under the laws of this State to participate as a member of any such mutual insurance company is hereby declared to be incidental to the purpose for which such corporation is organized and as much granted as the rights and powers expressly conferred."

Appellant contends that this section only attempts to authorize the purchase of insurance in domestic mutual corporations, and confers no authority to purchase insurance in foreign mutual insurance companies, but this con-

tention is without force when read in connection with § 16 of said act, incorporated as § 6066 of Crawford & Moses' Digest, which is as follows: "Any mutual insurance company organized outside of this State, and authorized to transact the business of insurance on the mutual plan in any State, district or territory, shall be admitted and licensed to transact the kinds of insurance authorized by its charter or articles to the extent, and with the powers and privileges specified in this act, and when it shall be solvent under this act, and shall have complied with the following requirements."

This suit was brought by appellant, a taxpayer, to restrain appellee from buying insurance to protect its property from loss by fire and tornado from Pennsylvania Lumbermen's Mutual Fire Insurance Company, a foreign corporation doing business in this State under permit, and which operates its business under the mutual system without capital stock.

We think act 652 of the Acts of 1919 confers authority upon school districts to buy fire and tornado insurance in foreign as well as domestic mutual companies when foreign mutual companies have complied with all requirements exacted of them in order to write the kind of insurance authorized by their respective charters and articles. The record in this case reflects that Pennsylvania Lumbermen's Mutual Fire Insurance Company has met all such requirements.

Appellants contend, however, that the statutes quoted above authorizing the acceptance by school districts of policies in mutual companies makes school districts members of a private corporation and lends their credit to such corporations in violation of § 5 of article 12, and § 1 of article 16 of the Constitution of 1874, which reads as follows:

"Article 12. Section 5. No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate any money for, or loan its credit to, any corporation, association, institution or individual.

"Article 16. Section 1. Neither the State nor any city, county, town or other municipality in this State

shall ever loan its credit for any purpose whatever, nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants of scrip."

The policy or contract involved in the case at bar fixes a definite maximum premium which the school district must pay and provides for no additional liability against it. The provision referred to provides for the payment of one-half of the premium in cash and limits the assessment premium against it, if it becomes necessary to make such an assessment, to one times the cash premium paid. In other words, a maximum premium is absolutely agreed upon as the extent of liability in any event, one-half of which is to be paid in cash, and the other one-half by an assessment if it becomes necessary. The policy contains no indeterminate liability. This kind of a contract does not make the school district a stockholder in the mutual insurance company, nor is it the lending of the credit of the district to a private corporation. In fact, the written policy involved conforms to §§ 6028 and 6031 of Crawford & Moses' Digest, which are as follows:

"Section 6028. The maximum premium payable by any member shall be expressed in the policy, or in the application for the insurance. Such maximum premium may be the cash premium and an additional contingent premium not less than the cash premium, or may be solely a cash premium. No policy shall be issued for a cash premium without an additional contingent premium, unless the company has a surplus of at least one hundred thousand dollars or a surplus which is not less in amount than the capital stock required of domestic stock insurance companies transacting the same kind of insurance."

"Section 6031. Such company not possessed of assets at least equal to the unearned premium, reserve and other liabilities shall make an assessment upon its members liable to assessment to provide for such deficiency, such assessment to be against each such member in pro-

portion to such liability as expressed in his policy; provided, the Commissioner may, by written order, relieve the company from an assessment or other proceeding to restore such assets during the time fixed in such order; and provided, that any domestic company which shall be deficient in providing the unearned premium reserve required hereby may, notwithstanding such deficiency, come under this act on the condition that it shall each year thereafter reduce such deficiency at least fifteen per cent. of the original amount thereof, and in such case it may increase its assessments accordingly.''

The following cases and texts sustain the validity of the policy involved in the case at bar; *Fuller* v. *Lockhart*, 209 N. C. 61, 182 S. E. 783; *Downing* v. *Sch. Dist. of City of Erie*, (1929), 297 Pa. 347, 147 Atl. 239; *French* v. *Mayor, etc. of Millville*, (1901), 66 N. J. Law 392, 49 Atl. 465; affirmed (1902), 67 N. J. Law 349, 51 Atl. 1109; 1 Joyce on Insurance (2d ed.) 708; 1 Cooley's Briefs on Insurance (2d ed.) 104; 3 Dillon on Municipal Corporations (5th ed.) 1558, note; 5 McQuillin on Municipal Corporations (2d ed.) 959; 1 Cooley on Constitutional Limitations 469, note.

It is unnecessary in this case to consider the charter powers or bylaws of the Pennsylvania Lumbermen's Fire Insurance Company, organized in Pennsylvania, for they do not control or have any bearing on policies issued by it on property in Arkansas. It was decided by this court in the case of *Federal Union Surety Company* v. *Flemister*, 95 Ark. 389, 130 S. W. 574, (quoting syllabus) that: ''The liability of a foreign fire insurance company upon a policy issued upon property in this State is governed, not by the charter powers and bylaws of such company nor by the laws of the State under which it was organized to do business, but by the terms of the policy and the laws of this State.''

No error appearing, the decree is affirmed.